1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HARRISON LAVERGNE, JR., | Case No. EDCV 12-2172-DOC (LAL) |
| Petitioner, | |
| v. | **FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |
| DANIEL PARAMO, Warden, | |
| Respondent. | |

This Final Report and Recommendation[1] is submitted to the Honorable David O. Carter, United States District Judge, under the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

## I.

## PROCEEDINGS

On December 11, 2012, Harrison Lavergne, Jr. ("Petitioner") filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254. On April 17, 2013, Respondent filed an Answer to the Petition. On June 13, 2013, Petitioner filed a Traverse. Thus, this matter is ready for decision.

///

---

[1] This Final Report and Recommendation is issued to clarify the discussion of Petitioner's conflict of interest claim. It does not alter the substance of this Court's analysis.

## II.

## PROCEDURAL HISTORY

On September 9, 2008, Petitioner was convicted after a jury trial in the Riverside County Superior Court of one count of first degree murder,[2] one count of attempted first degree murder,[3] and one count of assault with a deadly weapon.[4]  (Clerk's Transcript ("CT") at 231-34, 276-79; Volume 2 Reporter's Transcript ("RT") at 362-64.)  The jury also found true an allegation that Petitioner personally used a deadly and dangerous weapon, to wit, a knife, during the commission of the crimes.[5]  (3 RT at 934-37.)  On January 30, 2009, the trial court sentenced Petitioner to a state prison term of four years plus 26 years to life plus seven years to life.  (CT at 276-79; 3 RT at 486, 488.)

Petitioner appealed the conviction to the California Court of Appeal.  (Lodgments 6-8.)  On October 13, 2010, the California Court of Appeal affirmed the judgment.  (Lodgment 9.)

Petitioner next filed a petition for review in the California Supreme Court.  (Lodgment 10.)  On January 12, 2011, the supreme court denied the petition.  (Lodgment 11.)

Petitioner next filed a petition for writ of certiorari in the United States Supreme Court.  (Lodgment 12.)  On June 20, 2011, the Supreme Court denied the petition.  (Lodgment 13.)

Next, Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court.  (Lodgment 14.)  On May 14, 2012, the superior court denied the petition with a citation to In re Clark, 5 Cal.4th 750, 765 (1993).  (Lodgment 15.)

Petitioner then filed a habeas corpus petition in the California Court of Appeal.  (Lodgment 16.)  On June 6, 2012, the court of appeal denied habeas relief without comment.  (Lodgment 17.)

Finally, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  (Lodgment 18.)  On October 17, 2012, the supreme court denied habeas relief with citations to People v. Duvall, 9 Cal.4th 464, 474 (1995); In re Dixon, 41 Cal.2d 756, 759 (1953);

---

[2] Cal. Penal Code § 187(a).
[3] Id. at §§ 187(a), 664.
[4] Id. at § 245(a)(1).
[5] Id. at § 1192.7(c)(23), 12022(b)(1).

In re Swain, 34 Cal.2d 300, 304 (1949).  (Lodgment 19.)

### III.

### SUMMARY OF THE EVIDENCE PRESENTED AT TRIAL

Because Petitioner is not challenging the sufficiency of the evidence, after independently reviewing the record, this Court adopts the factual discussion of the California Court of Appeal opinion as a fair and accurate summary of the evidence presented at trial:[6]

#### A. Prosecution Case

In May 2005, Garcia and Flavio Torres lived in a trailer located inside a junkyard in Thermal where they and Lemus worked; Estrada lived in his van in the same junkyard.  Lemus was a friend of defendant and had stayed at defendant's house for a few days; Estrada had also visited defendant's house several times.  Neither Lemus nor Estrada had had any problems with defendant. Lemus admitted he was addicted to methamphetamine and used it as often as he could get it, sometimes daily. Lemus, Torres, and Garcia frequently used drugs together.

Shortly before May 1, 2005, a problem arose between defendant and an unidentified person at the junkyard.  Garcia tried to intervene, but defendant told him not to get involved and that he did not want to see Garcia at the junkyard.

In the evening of May 1, 2005, Garcia, Lemus, Torres, and a woman identified only as Connie had used methamphetamine in Torres's trailer.  Garcia and Connie left, and a few minutes later, Lemus heard Garcia yelling for help and asking for someone to call an ambulance.  Lemus went outside and saw defendant, who was standing next to the door of Garcia's car, hitting Garcia, who was in the driver's seat.  Another man, whom Lemus had never seen before and could not describe, was also striking Garcia. Connie got out of the car.

Lemus heard Garcia ask defendant what was happening and heard defendant respond, "You're gone" and "Fuck the ambulance."  Defendant continued to hit Garcia. Lemus asked what was happening, and defendant said, "He's gone, and you're gone, too."  Defendant then came over to Lemus and hit

---

[6] "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (citing 28 U.S.C. § 2254(e)(1)).  Thus, Ninth Circuit cases have presumed correct the factual summary set forth in an opinion of the California Court of Appeal under 28 U.S.C. §2254(e)(1).  See, e.g., Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2009) (citations omitted); Slovik v. Yates, 556 F.3d 747, 749 n.1 (9th Cir. 2009).

him on the face, nose, and stomach, knocked him to the ground, and kicked him in the face and body.  Lemus sustained fractures to his nose and forehead.  Lemus asked why defendant was hitting him, and defendant said, "It was on the contract."  At some point, Lemus saw Torres come out of the trailer and run away.[FN3]

FN3. That same night, Torres sustained a stab wound to his neck and lacerations to his right shoulder. Defendant was not charged with Torres's stabbing, and Torres did not testify at defendant's trial.

Defendant went back to Garcia's car and asked the man who was with him for "the blade."  Lemus saw defendant pull something out of Garcia's body.  Lemus then ran away. Garcia bled to death in his car as a result of multiple stab wounds.

Lemus ran to an acquaintance's house, and that man drove Lemus back to his trailer park.  The managers of the park called the police.  Lemus was initially reluctant to tell the police who had stabbed Garcia, but he later called the police and identified defendant as the assailant.  Lemus selected defendant's photograph from a photographic lineup.

At about 11:00 the same night, Estrada left his van to urinate.  On his way back, defendant and two or three other men attacked him and hit him.  Defendant stabbed him nine times, inflicting life-threatening wounds.  Estrada could not describe the other men because it was too dark.

A security guard had been on patrol in a nearby mobilehome park when some people flagged him down and told him someone had been stabbed.  They brought the security guard to a trailer, where he saw Estrada lying on a couch and bleeding.  The security guard called the sheriff's office.

**B. Defense Case**

A sheriff's department investigator testified he interviewed Lemus shortly after the incident.  At first, Lemus said it had been too dark to identify his assailant, and Lemus seemed surprised when he learned someone had been found dead in the car.  Lemus told the investigator he was afraid the assailants might find out who he was.

Later that day, Lemus contacted the investigator and identified defendant

as his assailant.  Lemus also told the investigator he had seen defendant and Garcia together the day before the incident, and everything had seemed fine between them.

## IV.

## PETITIONER'S CLAIMS

Petitioner raises the following claims for habeas corpus relief:

(1)  Trial counsel was ineffective for failing to cross-examine and impeach prosecution witness Francisco Lemus (Petition, Attachment F ("Grounds") at 1-2);

(2)  Trial counsel was ineffective for failing to call witnesses (Grounds at 2-4);

(3)  Trial counsel was ineffective for failing to request discovery (Grounds at 4-7);

(4)  Substitute counsel was ineffective for failing to re-investigate the case (Grounds at 7-9;

(5)  Trial counsel had a conflict of interest because he once represented witness Flavio Torres (Grounds at 9-11);

(6)  The prosecutor's improper submission of her personal notes regarding Flavio Torres to the jury during deliberations violated Petitioner's rights to confront and cross-examine witnesses (Grounds at 11-13);

(7)  The jury committed misconduct by considering during deliberations the prosecutor's personal notes regarding Flavio Torres (Grounds at 13-16); and

(8)  Trial counsel violated Petitioner's right to testify by failing to call him as a witness at trial (Grounds at 16-19).[7]

## V.

## STANDARD OF REVIEW

**A.**    **28 U.S.C. § 2254.**

The standard of review that applies to Petitioner's claims is stated in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

(d)      An application for a writ of habeas corpus on behalf of a person in custody

---

[7] Respondent argues that Claims One through Five are procedurally deficient and thus unexhausted, and that Claims Six through Eight are procedurally barred.  (Answer at 4-9.)  In the interest of judicial economy, this Court will address Petitioner's claims on the merits rather than perform the exhaustion and procedural default analysis.

pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  If these standards are difficult to meet, it is because they were meant to be. As the Supreme Court stated in <u>Harrington v. Richter</u>,[8] while the AEDPA "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings[,]" habeas relief may be granted only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts" with United States Supreme Court precedent.  Further, a state court factual determination must be presumed correct unless rebutted by clear and convincing evidence.[9]

**B.     <u>Sources of "Clearly Established Federal Law."</u>**

According to <u>Williams v. Taylor</u>,[10] the law that controls federal habeas review of state court decisions under the AEDPA consists of  holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision."  To determine what, if any, "clearly established" United States Supreme Court law exists, a federal habeas court also may examine decisions other than those of the United States Supreme Court.[11]   Ninth Circuit cases "may be persuasive."[12]   A state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law, if no Supreme Court decision has provided a clear holding relating to the legal issue the habeas petitioner raised in state court.[13]

---

[8] 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011).

[9] 28 U.S.C. § 2254(e)(1).

[10] 529 U.S. 362, 412, 120 S. Ct. 1495, 146, L. Ed. 2d 389 (2000).

[11] <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n.6 (9th Cir. 2000).

[12] <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600 (9th Cir. 1999).

[13] <u>Brewer v. Hall</u>, 378 F.3d 952, 955 (9th Cir. 2004); <u>see</u> <u>also</u> <u>Carey v. Musladin</u>, 549 U.S. 70, 77, 127, S. Ct. 649, 649, 166 L. Ed. 2d 482 (2006) (in the absence of a Supreme Court holding regarding the prejudicial effect of spectators' courtroom conduct, the state court's decision could not have been contrary to or an unreasonable application of clearly established federal law).

Although a particular state court decision may be both "contrary to" and an "unreasonable application of" controlling Supreme Court law, the two phrases have distinct meanings under Williams.

A state court decision is "contrary to" clearly established federal law if the decision either applies a rule that contradicts the governing Supreme Court law, or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts.[14]  If a state court decision denying a claim is "contrary to" controlling Supreme Court precedent, the reviewing federal habeas court is "unconstrained by § 2254(d)(1)."[15]  However, the state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."[16]

State court decisions that are not "contrary to" Supreme Court law may be set aside on federal habeas review only "if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law, or based on 'an unreasonable determination of the facts.'"[17] Accordingly, this Court may reject a state court decision that correctly identified the applicable federal rule but unreasonably applied the rule to the facts of a particular case.[18]  However, to obtain federal habeas relief for such an "unreasonable application," a petitioner must show that the state court's application of Supreme Court law was "objectively unreasonable" under Woodford v. Visciotti.[19]  An "unreasonable application" is different from merely an incorrect one.[20]

Where, as here with respect to Claim Four, the California Supreme Court denied a petitioner's claims without comment, the state high court's "silent" denial is considered to be "on the merits" and to rest on the last reasoned decision on these claims - in the case of Claim Four, the grounds the California Court of Appeal stated in its decision on direct appeal.[21]

---

[14] Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam) (citing Williams, 529 U.S. at 405-06).

[15] Williams, 529 U.S. at 406.

[16] Early, 537 U.S. at 8.

[17] Id. at 11 (citing 28 U.S.C. § 2254(d)).

[18] See Williams, 529 U.S. at 406-10, 413.

[19] 537 U.S. 19, 27, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002).

[20] Williams, 529 U.S. at 409-10.

[21] See Ylst v. Nunnemaker, 501 U.S. 797, 803-06, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991).

Where, as here with Claims One through Three and Five through Eight, the state courts have supplied no reasoned decision for denying the petitioner's claims on the merits, this Court must perform an "'independent review of the record' to ascertain whether the state court decision was objectively unreasonable."[22]

To the extent the state court rejected Claims Six through Eight on procedural ground and did not reach their merits, the deferential standard of Section 2254(d) does not apply and this Court reviews the claims de novo.[23]

**VI.**

**DISCUSSION**

**A.**    **Ineffective Assistance of Counsel.**

**1.**    **Background.**

In Claims One through Three, Petitioner alleges ineffective assistance of trial counsel.  In Claim Four, Petitioner alleges ineffective assistance of substitute counsel.

**2.**    **Legal Standard.**

In order to prevail on his ineffective assistance of counsel claim under the United States Supreme Court decision in <u>Strickland v. Washington</u>, Petitioner must prove two elements:  (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced him.[24]  A court evaluating an ineffective assistance of counsel claim does not need to address both elements of the test if a petitioner cannot prove one of them.[25]

To prove deficient performance, a petitioner must show that counsel's performance was below an objective standard of reasonableness.[26]  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[27]  Only if counsel's acts or omissions, examined in light of all the surrounding circumstances, fell outside this "wide

---

[22] <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003) (citing <u>Delgado v. Lewis</u>, 223 F.3d 976, 981-82 (9th Cir. 2000)).

[23] <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167-68 (9th Cir. 2002).

[24] <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[25] <u>Id.</u> at 697.

[26] <u>Id.</u> at 687-88.

[27] <u>Id.</u> at 689.

range" of professionally competent assistance will petitioner prove deficient performance.[28]

Proof of deficient performance does not require habeas corpus relief if the error did not result in prejudice.[29]   Accordingly, a petitioner must also show that, but for counsel's unprofessional errors, the result of the proceedings would have been different.[30]   Thus, a petitioner will prevail only if he can prove that counsel's errors resulted in a "proceeding [that] was fundamentally unfair or unreliable."[31]

### 3. Analysis.

#### a. Claim One: Failure to Impeach Francisco Lemus.

In Claim One, Petitioner argues his trial counsel was ineffective for failing to adequately cross-examine and impeach Francisco Lemus.  (Grounds at 1-2.)  Specifically, Petitioner argues counsel should have impeached Lemus with his statements to police that he did not know who attacked him and Garcia.  (Grounds at 1-2.)

Police interviewed Lemus within about an hour of the attack.  (Petition, Exh. A at 2.)[32] In that initial interview, Lemus stated the assailants were "two unknown Hispanic male adults." (Petition, Exh. A at 2.)  The morning after the attack, Lemus told police he did not know who the assailants were because it was dark during the attack.  (Petition, Exh. B at 4-5; Exh. C at 2.) Several hours later, Lemus told police Petitioner was the one who attacked him and Garcia. (Petition, Exh. D; 1 RT at 103-04.)

On direct-examination at trial, Lemus testified he did not identify Petitioner for police at first because he did not know the extent of the crime and thought Petitioner simply had made a mistake.  However, he called the detective back a few hours later to identify Petitioner as the assailant.  (1 RT at 103-04.)  On cross-examination, Petitioner's trial counsel asked Lemus why he did not identify Petitioner initially.  Petitioner explained that he wanted to protect Petitioner at first, but, after finding out Garcia died, Lemus decided to tell police the truth.  (1 RT at 124.)

---

[28] Id. at 690.
[29] Id. at 691.
[30] Id. at 694.
[31] Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993).
[32] Petition did not number the pages of his exhibits.  This Court has numbered the pages of each exhibits for identification.

It appears from this record that Petitioner's trial counsel questioned Lemus about his early statements as best he could.  The jury heard that Lemus refused to identify Petitioner at first.  The jury also heard that Lemus did so in an attempt to protect himself and Petitioner.  However, Lemus explained for the jury that, once he learned Petitioner had killed Garcia, he no longer felt the need to protect Petitioner.  With the issue of Lemus's initial inability to identify the assailant clearly before the jury, there was nothing more Petitioner's counsel could have done to impeach the witness.  Petitioner has not shown that further cross-examination of Lemus on this issue would have benefited the defense.  Counsel was not ineffective for failing to proceed with futile questioning.[33]

### b.    Claim Two:  Failure to Investigate and Call Witnesses.

In Claim Two, Petitioner argues counsel was ineffective for failing to investigate and call witnesses.  (Grounds at 2-4.)  Petitioner argues counsel should have called Flavio Torres because his statements to police were internally consistent and contradicted Lemus's story.  (Grounds at 3.)  He further argues counsel should have called Deputy Dusek to testify that Lemus initially identified the attackers as "two Mexicans" and Sergeant Guy Gnatek to testify that Lemus said he was attacked by "several subjects" and that Sergeant Gnatek thought Lemus "looked all guilty."  (Grounds at 3-4.)  Finally, Petitioner argues there "were numerous witnesses on the prosecutor's witness list" who were at the scene of the crime or knew something about the crime.  Petitioner argues these witnesses should have been called "as corroborating witnesses to defendant's testimony."  (Grounds at 4, 6.)

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."[34]  Here, Petitioner has not shown that counsel failed to investigate these witnesses.  Rather, it is likely counsel made a

---

[33] Rupe v. Wood, 93 F.3d 1434, 1444-45 (9th Cir. 1996) (Defense counsel's failure to take a futile action does not constitute ineffective assistance of counsel.).

[34] Wiggins v. Smith, 539 U.S. 510, 521-22, 123 S. Ct. 2527, 156 L. Ed.2d 471 (2003) (quoting Strickland, 466 U.S. at 691).

reasonable strategic decision that these witnesses did not warrant further investigation, as there is no proof any of these witnesses had information that would be helpful to the defense.  Thus, Petitioner's claim that his trial counsel failed to investigate the witnesses is unsupported.[35]

As to Petitioner's claim that his trial counsel was ineffective for failing to call these witnesses at trial, Petitioner cannot establish ineffective assistance on this basis because he fails to provide any proof these witnesses were able and willing to testify on Petitioner's behalf, or of the content of their testimony.  Alcala v. Woodford, 334 F.3d 862, 872-73 (9th Cir. 2003) (to establish prejudice caused from failure to call witness, petitioner must show witness was likely to have been available to testify, and would have given proffered testimony, and that testimony would have created reasonable probability that verdict would have been different).

To the extent the proposed testimony of the police personnel is reflected in the police reports, Petitioner has not shown that their testimony would have been helpful.  The jury was already aware that Lemus failed to identify his attacker at first.  Thus, testimony from Deputy Dusek that Lemus initially identified the attackers as "two Mexicans," and Sergeant Guy Gnatek that Lemus said he was attacked by "several subjects," would have done nothing to further Petitioner's defense.  As for Petitioner's allegation that Sergeant Gnatek believed Lemus looked guilty, Petitioner has not provided any evidentiary support.  This Court has not found anything in the record to indicate the police thought Lemus was a suspect in these crimes or was otherwise guilty of anything.  What is apparent from the record is Detective Brewster's impression that, when Lemus stated he did not know who committed the attacks, he was not being entirely truthful.  (Petition, Exh. B at 4.)  This evidence, however, bolsters the prosecution's case in that it suggests Lemus knew Petitioner was the attacker all along and simply did not want to tell police.  Because Petitioner cannot show that any of these witnesses would have been helpful to the defense, he cannot show counsel was ineffective for failing to call them at trial.

### c.    Claim Three:  Failure to Request Discovery.

In Claim Three, Petitioner argues his counsel was ineffective for failing to obtain

---

[35] See Siripongs v. Calderon, 133 F.3d, 732 734 (9th Cir. 1998) (where an attorney has consciously decided not to conduct further investigation because of reasonable tactical evaluations, his or her performance is not constitutionally deficient).

discovery from the prosecution.  (Grounds at 4-7.)  Specifically, Petitioner argues counsel should have obtained audio/video tapes of a police interview with Shauna Sumatzkuku because it showed Sumatzkuku's brother "was always fighting with the victims," that the brother matched the description of the suspect, and that Marcelino Guerrero was around the crime scene. (Grounds at 5, 6.)  Petitioner further argues counsel should have obtained test results from bloody fingerprints found near the crime scene because the test results "would have shown that others were involved in the commission of these crimes."  (Grounds at 5-6.)

Petitioner offers nothing more than his own conclusions that the evidence at issue existed, that his trial counsel failed to obtain it rather than making a strategic decision not to use it, and that it would have benefited his defense.  Vague and conclusory allegations such as these are insufficient to prove ineffective assistance.[36]

### d.    Claim Four: Investigation by Substitute Counsel.

In Claim Four, Petitioner argues that the substitute counsel the trial court appointed to represent him after the verdicts to investigate his claims of ineffective assistance of trial counsel was ineffective because she failed adequately to investigate Petitioner's claims regarding trial counsel's deficient performance.  (Grounds at 7-9.)

On direct review, the California Court of Appeal detailed the factual background related to Petitioner's claim, as follows:

As noted, after the trial court denied defendant's *Marsden* motion as to Lieman, the trial court granted defendant's request to represent himself.  However, on November 17, 2008, defendant asked that new counsel be appointed for him, and the court reappointed the conflict panel.

The conflict panel selected Miller to represent defendant.  At a hearing on December 3, 2008, Miller stated defendant had told her he intended to ask for a *Marsden* hearing (defendant's fourth *Marsden* request), and if the request to relieve her was denied, he planned to proceed in propria persona.  Defendant confirmed that was his wish.

---

[36] Jones v. Gomez, 66 F.3d 199, 204-205 (9th Cir. 1995) (vague speculation or mere conclusions unsupported by record are not sufficient to state claim).

The trial court held a *Marsden* hearing.  Defendant stated his belief that Miller had not adequately investigated his claim of ineffective assistance of counsel because she had taken only four days to do so.  He stated Miller had told him she had not looked at any of the discovery, and she had not reinvestigated the case.  Defendant then repeated the alleged shortcomings of his trial attorney. Miller described what she had done to investigate defendant's claim of ineffective assistance of counsel for the purpose of filing a new trial motion and repeated her conclusion that such claim was meritless.  Defendant also stated he had requested his trial transcripts from Miller, but she had failed to provide them.  Miller explained she had not done so because when she had had the trial transcripts, she had been appointed only to review the claim of ineffective assistance of counsel and was not then defendant's attorney of record.  She stated she had forwarded defendant's request to Lieman, and the transcripts were no longer in her possession.  Defendant stated he had sent a letter to Lieman on November 13, 2008, requesting his discovery but had received no response.

The trial court denied the *Marsden* motion, stating there had not been an irrevocable breakdown of the relationship, but rather a difference as to tactics. Defendant requested to resume his in propria persona status. The trial court granted the request, and he thereafter represented himself at sentencing.

(Lodgment 9 at 21-22.)  The California Court of Appeal denied Petitioner's claim, reasoning:
. . . Here, although defendant lists various steps he contends Miller should have undertaken, he has made no showing of the nature and relevance of the evidence that counsel failed to discover or present.

. . .

Here, defendant argues he was prejudiced because, although he was convicted of first degree murder, "the question of motive was never resolved."  It is elementary that motive is not an element of murder.  (See *People v. Snow* (2003) 30 Cal.4th 43, 97-98; see also 1 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Elements, § 4, pp. 202-204.)  Defendant cannot, therefore, demonstrate prejudice based on the failure to show motive.

Defendant next argues that "[f]urther investigation may uncover witnesses who can provide a basis for a lesser verdict of second degree murder or even manslaughter."  The prejudice element of a claim of ineffective assistance of

-13-

counsel requires a showing of "'prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome.'" (*People v. Gamache* (2010) 48 Cal.4th 347, 391.)  Defendant's speculation that potential favorable evidence might exist falls far short of that standard.  (See, e.g., *People v. Lucas* (1995) 12 Cal.4th 415, 448 & fn. 5 [a defendant "must do more than surmise that defense experts *might* have provided more favorable testimony"]; *People v. Kaurish* (1990) 52 Cal.3d 648, 689-690 [defendant failed to establish that retesting of physical evidence would have been likely to produce a different result].)

We conclude defendant has failed to show ineffective assistance of counsel.

(Lodgment 9 at 19-20.)

Petitioner has not shown his trial counsel was ineffective in any instance.  Thus, even if Petitioner could show his substitute counsel should have conducted a more thorough review of trial counsel's performance, Petitioner cannot show substitute counsel's lack of diligence resulted in prejudice.

For all the foregoing reasons, the state courts' rejection of each of Petitioner's ineffective assistance claims was not contrary to, or an unreasonable application of, federal law.  Habeas relief is not warranted on Claims One through Four.

**B.**     **Conflict of Interest.**

1.     **Background.**

In Claim Five, Petitioner argues his trial counsel operated under a conflict of interest because he was representing Flavio Torres in a separate matter "while he was a witness against defendant."  (Grounds at 9-11.)  Petitioner argues that this conflict compromised his defense because it caused counsel to refuse to call Flavio Torres as a witness in Petitioner's defense. (Grounds at 11.)

It appears from the exhibits Petitioner attached to the Petition that Petitioner's trial counsel had represented Flavio Torres at some point before trial.[37]  However, trial counsel had

---

[37] Respondent did not lodge with this Court copies of the transcripts related to this issue.  Instead, Respondent noted that the transcripts of Petitioner's motion to relieve trial counsel were confidential and, thus, sealed.  Respondent requested that this Court order Petitioner to disclose copies of the related transcripts.  (Answer at 10-11 n.8.)

been relieved as Torres's counsel before Petitioner's trial started.  (Petition, Exh. P at 3.)

### 2.    Legal Standard.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to conflict-free representation.[38]  An alleged conflict violates the right to conflict-free counsel only if the conflict "adversely affected" trial counsel's performance.[39]  The United States Supreme Court explained in Cuyler v. Sullivan, that in order to establish a violation of the Sixth Amendment, a petitioner must demonstrate that: (1) counsel actively represented conflicting interests, and (2) an actual conflict of interest adversely affected counsel's performance.[40]  In Mickens v. Taylor, the Supreme Court confirmed that "an actual conflict of interest mean[s] precisely a conflict that affected counsel's performance – as opposed to a mere theoretical division of loyalties."[41]

The Ninth Circuit explained in Hovey v. Ayers, that "[s]uccessive representation is sufficient to establish a conflict."[42]  However, "generally, it is more difficult to show an actual conflict resulting from successive rather than simultaneous representation."[43]  "Conflicts may arise in successive representation cases 'if the cases are substantially related or if the attorney reveals privileged communications of the former client or otherwise divides his loyalties.'[44]"

### 3.    Analysis.

Petitioner does not claim that his case was substantially related to the case in which his trial counsel represented Torres or that his trial counsel revealed privileged communications of Torres.  Rather, Petitioner claims the dual representation caused his trial counsel to divide his loyalty between Petitioner and Torres.  However, Petitioner fails to show that the alleged divided loyalties adversely affected counsel's performance.  Petitioner alleges the conflict was the cause of counsel's decision not to call Torres as a defense witness at trial.  Yet, the record fails to

---

Because the record, as the parties have presented it to this Court, is sufficient to fully consider Petitioner's claim, this Court will not order Petitioner to disclose the transcripts.

[38] Stenson v. Lambert, 504 F.3d 873, 885 (9th Cir. 2007).

[39] Alberni v. McDaniel, 458 F.3d 860, 870 (9th Cir. 2006).

[40] Cuyler v. Sullivan, 446 U.S. 335, 348-50, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980).

[41] Mickens v. Taylor, 535 U.S. 162, 171, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002) (emphasis omitted).

[42] 458 F.3d 892, 908 (9th Cir. 2006) (internal citations omitted).

[43] Id. (internal quotation marks and citation omitted).

[44] United States v. Swisher, 790 F.Supp.2d 1215, 1230 (D. Idaho 2011) (quoting Mannhalt v. Reed, 847 F.2d 576, 580 (9th Cir. 1988)).

support this allegation.  Torres was an additional victim of Petitioner's knife attack.  (1 RT at 148; 2 RT at 200; Petition, Exh. G at 2.)  While Torres never identified his attacker for police, he informed police he had been at the scene of the crime and he had been stabbed.  (Petition, Exh. G at 2; Exh. H at 2.)  Torres then directed police to return to the junkyard where they found Garcia's body.  (1 RT at 149-50, 162.)  Although Torres did not identify Petitioner as the assailant, he also did not identify anyone else.  None of this evidence would have been helpful to Petitioner.  In fact, it would have further described the events of the night, highlighted that another victim had been stabbed at the scene, and corroborated the stories of the other witnesses, who positively identified Petitioner as the assailant.

To the extent Torres's statement to police that he was in his trailer painting and had exited only to get some water, (Petition, Exh. H at 2), differed from Lemus's statement that Torres exited the trailer after him when they heard Garcia's screams, this inconsistency is not material.  Torres confirmed to police that he had been in his trailer with Lemus and, after exiting the trailer, saw Garcia being assaulted.  (Petition, Exh. H at 2.)  What Torres told police he was doing inside the trailer and the subjective reason he had for exiting the trailer does nothing to impeach Lemus's statements or prove Petitioner's innocence.

Because Torres would not have been a helpful defense witness, and, in fact, would have corroborated the prosecution's evidence, Petitioner cannot show that his trial counsel refused to call Torres in Petitioner's defense merely because he had represented Torres on some previous unrelated occasion.

Accordingly, the state courts' rejection of each of Petitioner's conflict of interest claim was not contrary to, or an unreasonable application of, federal law.  Habeas relief is not warranted on Claim Five.

## C.    Confrontation Violation.

### 1.    Background.

In Claim Six, Petitioner argues the prosecutor violated his rights to confront and cross-examine witnesses when she improperly included her personal opening statement notes referencing Flavio Torres with the evidence submitted to the jury for deliberations.  (Grounds at

11-13.)

Before trial, the parties discussed with the trial court the admissibility of evidence regarding Flavio Torres. (1 RT at 31-50.) The prosecutor indicated that Torres was scared and a reluctant witness. (1 RT at 32.) Accordingly, the prosecutor sought to introduce evidence related to Torres through other witnesses, thereby sparing him the obligation to testify personally. (1 RT at 31-32.) Petitioner's trial counsel sought to exclude evidence related to Torres as being irrelevant and more prejudicial than probative. (1 RT at 36, 48.) The trial court held the prosecutor would be allowed to produce evidence of Torres's presence at the crime scene and the injuries he sustained, but could not present any statements Torres allegedly made. (1 RT at 49.)

At some point before the start of trial, the prosecutor drafted notes outlining her opening statement. Her notes read, as follows:

. . . Sheriff's station and identified the man who stabbed Nacho and who attacked him as Harrison Lavergne. He explained he had been too afraid to say so earlier but now he was afraid to have him out on the loose.

Flavio was one of the other men who had been stabbed. He came out of his trailer behind Francisco. He saw what was going on and tried to run, but he didn't get very far before he, too, was attacked. He was stabbed multiple times, but was able to get away and go for help.

When the police got to Flavio, he was in pain from multiple stab wounds and holding a towel to the back of his neck, attempting to slow down the bleeding. An ambulance was called and he was transported to the hospital.

As the paramedics were treating him, he told the police he had been attacked outside of his trailer and that there was another victim there, too. They went to investigate immed[iately].

However, when officers were responding to Flavio's location, dispatch had sent out another call about a stabbing victim who was at a location about a ¼ mile away.  Some of the officers had responded to Flavio's location and other's went to where Miguel Estrada was.

When the officers were told about the location of the attacks and about another v[ictim], they went to that location immed[iately] but it was too late.  They found Nacho in his car, dead.  Pools of blood were in the driver's side of the car, w[ith] blood running out the door.  The door was opened and Nacho was now in the back seat, covered in blood and sand.  Whether he got out and tried to get help and came back to the back seat or whether he was put into the back seat, we don't know.

What the evidence does show, however, is that Nacho died from multiple stab wounds viciously inflicted by the d[efendant].  The d[efendant] killed Nacho.  He nearly killed Miguel, he badly injured Flavio, and he beat up Francisco.

The evidence will show you beyond a reasonable doubt that the d[efendant] left one man dead; two men badly injured; one boy beaten.

Flavio

Flavio ran when he saw the defendant attacking Nacho.

Flavio was attacked and stabbed multiple times only moments after he witnessed defendant killing Nacho.

///

-18-

Miguel

While walking in the junkyard close to where the defendant killed Nacho, only moments afterwards, the defendant stabbed Miguel multiple times, leaving this potential witness for dead.


CAUSE OF DEATH:

Multiple stab wounds.


DEFENDANT MURDERED NACHO WITH A KNIFE

(Petition, Exh., R at 2-4.)[45]

During trial, Francisco Lemus testified that he knew Flavio Torres and pointed out the location of Torres's trailer in relation to the crime scene. (1 RT at 74-76.) Lemus testified that on the night of the crime he was at Torres's trailer with Torres and Garcia. (1 RT at 83.) According to Lemus, when he exited the trailer to check on Garcia's screams, Torres exited the trailer after him but then disappeared. (1 RT at 128.) In addition, Riverside County Sheriff's Detective Doug Swan testified that he met Torres upon responding to a call of a stabbing victim. When Detective Swan made contact with Torres, Torres was holding his hand against the right side of his neck and had blood on his clothes. (1 RT at 148-49.) Based on information Detective Swan received from Torres, he responded to the junkyard where he found Garcia's body. (1 RT at 149-53.) Also, Riverside County Sheriff's Detective Gary Le Clair responded to the hospital where he interviewed Torres and saw his injuries. (1 RT at 157-59.) Finally, Mark David Hoffman, M.D. testified that he treated Flavio Torres in the emergency room on the night of the stabbing. (2 RT at 199-200.) Neither side called Flavio Torres as a witness at trial.

///

///

---

[45] The prosecutor's opening statement was not transcribed, and thus, is not included in the record before this Court. (1 RT at 65.) However, the prosecutor represented to the trial court at the time of Petitioner's new trial motion that, at the trial court's direction, she did not discuss the evidence involving Flavio Torres during her opening statements. This Court has no basis to question the prosecutor's representation.

During the prosecutor's closing arguments, she told the jury Torres ran from the scene when he saw Garcia being attacked and that Torres was attacked moments later.  (2 RT at 313, 323, 329.)

Following the verdicts, Petitioner moved for a new trial based, in part, on the fact that the prosecutor's opening statement notes had been accidentally submitted to the jury.  (3 RT at 478.) The prosecutor explained that there was no evidence the jury had even looked at her notes during deliberations and that the information contained in the notes had been presented to the jury through witnesses and the prosecutor's closing arguments.  (3 RT at 479-80.)  The trial court denied Petitioner's motion for a new trial.  (3 RT at 485.)

A settled statement prepared for the appellate process described the events as follows:

### SETTLED STATEMENT

On September 9, 2008, the jury rendered its verdict.  (1 C.T. 185.)  After the jury returned its verdicts, was discharged, and the jury room exhibits were collected, court personnel notified the court that a portion of the prosecutor's opening statement notes were among the exhibits that had been sent into the jury room during deliberations.  Those notes contained references to the stabbing of an uncharged victim.

Upon learning of the inadvertent inclusion of the prosecutor's notes with the exhibits, the trial court conducted a hearing without a court reporter present. After reviewing the notes, the trial court ruled that no further action was required. The prosecutor's notes were marked as a court exhibit.  (1 C.T. 241.)

(Supplemental CT at 17-18.)

### 2.    **Legal Standard.**

In Crawford v. Washington, the United States Supreme Court held the Confrontation Clause bars admission of the "testimonial" statement of a witness who does not appear at trial, unless the witness is unavailable to testify at trial and the defendant has had a prior opportunity to cross-examine the witness.[46]  The Crawford rule applies only to hearsay statements that are

---

[46] 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

"testimonial."[47]  Crawford did not give a definitive definition of testimonial, but it identified three core classes of testimonial statements:  (1) ex parte in court testimony or its functional equivalent, (2) extrajudicial statements contained in formalized testimonial material such as affidavits, depositions, prior testimony or confessions, and (3) statements that were made under circumstances which would lead an objective witness reasonably to believe that the statements would be available for use at a later trial.[48]

"A Confrontation Clause violation is harmless, and so does not justify habeas relief, unless it had substantial and injurious effect or influence in determining the jury's verdict." Ocampo v. Vail, 649 F.3d 1098, 1114 (9th Cir. 2011) (internal quotation marks omitted) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)).

**3.   Analysis.**

First, it appears the only references to Torres that involved statements by Torres, rather than observations by other witnesses, and thereby could invoke Petitioner's rights under Crawford, were the notations that "Flavio was attacked and stabbed multiple times only moments after he witnessed defendant killing Nacho," that "he told the police he had been attacked outside of his trailer and that there was another victim there, too," and that "[h]e saw what was going on and tried to run, but he didn't get very far before he, too, was attacked."  However, even if this Court were to assume, without deciding, that the prosecutor's inadvertent submission of these notations regarding Torres's statements to the jury violated Petitioner's confrontation rights, any error was harmless.

The prosecutor presented evidence that Torres had been at the scene of the crime, that he sustained stab wounds, that he spoke to police, and that he was treated in the emergency room. Confirmation through the prosecutor's notes that Torres was stabbed moments after the attack on Garcia, that Torres told police about the attacks, and that he ran from the scene, would have had

---

[47] Id. at 51; Wharton v. Bockting, 549 U.S. 406, 420, 127 S. Ct. 1173, 167 L. Ed. 2d 1 (2007) (the Confrontation Clause has no application to non-testimonial statements); Davis v. Washington, 547 U.S. 813, 821, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006) (under Crawford, "[i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause").

[48] Crawford, 541 U.S. at 51-52.

little impact on the jury.  This is particularly true when viewed in light of the other evidence of Petitioner's guilt.  Lemus testified that Petitioner had been aggressive in the days leading up to the crime, that Garcia had attempted to calm him down, and Petitioner told Garcia he did not want to see Garcia around anymore.  (1 RT at 81-82.)   In addition, Lemus and Estrada, who were acquainted with Petitioner, positively identified him as the assailant both before and during trial.  (1 RT at 88-92, 95-96, 105, 116; 2 RT at 182, 187-89, 192, 195-96, 248-50.)  Given the state of this evidence, any error in the prosecutor's inadvertent submission of her notes to the jury could not have had a substantial and injurious effect or influence on the jury's verdict and, thus, was harmless.

Accordingly, the state courts' rejection of each of Petitioner's <u>Crawford</u> claim was not contrary to, or an unreasonable application of, federal law.  Habeas relief is not warranted on Claim Six.

**D.    <u>Jury Misconduct.</u>**

       **1.    <u>Background.</u>**

In Claim Seven, Petitioner argues the jury committed misconduct by considering the "unauthenticated 'extrinsic evidence'" contained in the prosecutor's opening statement notes. (Grounds at 13-16.)

       **2.    <u>Legal Standard.</u>**

The United States Supreme Court clearly established in <u>Irwin v. Dowd</u>, that a criminal defendant has a Sixth Amendment right to be tried by impartial jurors.[49]  The Supreme Court further held in <u>Smith v. Phillips</u>, that a jury must decide a case solely on the evidence before them.[50]  Even if a reviewing court finds that a jury improperly considered extrinsic evidence and thereby committed misconduct, habeas relief is unavailable unless the court is persuaded that the misconduct had a substantial and injurious effect or influence on the jury's verdict.[51]

///

///

---

[49] 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961).
[50] 455 U.S. 209, 217, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982).
[51] <u>Fields v. Brown</u>, 503 F.3d 755, 778 (9th Cir. 2007) (en banc).

**3.**     **Analysis.**

As explained in Section C, above, with respect to Petitioner's Confrontation Clause claim, given the state of the evidence presented at trial there is no possibility the submission of the prosecutor's notes to the jury had a substantial and injurious effect or influence on the jury's verdict. Thus, for the same reasons, Petitioner cannot show that the prosecution's inadvertent submission of her notes to the jury was prejudicial with respect to his jury misconduct claim.

Accordingly, the state courts' rejection of each of Petitioner's <u>Crawford</u> claims was not contrary to, or an unreasonable application of, federal law. Habeas relief is not warranted on Claim Six.

**E.**     <u>**Right to Testify.**</u>

    **1.**     <u>**Background.**</u>

In Claim Eight, Petitioner argues his counsel violated his right to testify in his own defense by failing to call him as a witness at trial. (Grounds at 16-19.)

Petitioner alleges it was the original defense strategy to allow Petitioner to testify and tell his story. (Grounds at 17.) After the verdicts Petitioner complained to the trial court that he wanted to testify at trial but counsel told him "it probably wouldn't be a good idea." (Petition, Exh. M at 10-11.) Petitioner explained that his trial counsel was supposed to let him know whether he would call Petitioner to testify but he then rested without discussing Petitioner's testimony further. (Petition, Exh. M at 11.) In response, trial counsel explained to the court that on several occasions he and Petitioner discussed the possibility of calling Petitioner to testify. (Petition, Exh. M at 15.) Counsel further explained that after going over Petitioner's story with him, he advised it was best if Petitioner did not testify. Petitioner agreed with counsel. (Petition, Exh. M at 15.)

    **2.**     <u>**Legal Standard.**</u>

The United States Supreme Court has made clear that a "defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense."[52] However, the right

---

[52] <u>Rock v. Arkansas</u>, 483 U.S. 44, 49, 51, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987) ("The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that 'are essential to due process of law in a fair adversary process.'") (quoting <u>Faretta v. California</u>, 422 U.S. 806, 819 n. 15,

to testify can be waived by a defendant, and a "waiver of the right to testify . . . need not be explicit."[53]  Neither the trial court nor counsel must advise a defendant of his right to testify against counsel's advice; and the trial court is not required to ensure that an on-the-record waiver has occurred.[54]  A defendant who wants to reject his attorney's advice and take the stand may do so by insisting on testifying, speaking to the court, or discharging his lawyer."[55]  A defendant waives the right to testify if he remains silent in the face of his attorney's decision not to call him as a witness.[56]

### 3.   **Analysis.**

Here, Petitioner and his trial counsel both acknowledged discussing with each other the possibility of Petitioner testifying at trial and that it was counsel's recommendation that Petitioner not testify. (Petition, Exh. M at 10-11, 15.)  When trial counsel rested the defense case without calling Petitioner to testify, Petitioner sat quietly.  In fact, he did not complain to the trial court about his desire to testify until after he was convicted.  (Petition, Exh. M.)  Petitioner's failure to address his desire to testify with the trial court is particularly telling where he had shown an ability throughout the proceedings to question his counsel's performance and requested multiple times that several different attorneys be relieved of their representation of him.  (See Lodgment 9 at 6.)  On this record, Petitioner cannot show that he insisted on testifying and, in the face of this insistence, was denied the opportunity to take the stand.  Thus, he cannot show that his counsel violated his right to testify.

Accordingly, the state courts' rejection of each of Petitioner's right to testify claim was not contrary to, or an unreasonable application of, federal law.  Habeas relief is not warranted on Claim Eight.

---

95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)).

[53] United States v. Pino-Noriega, 189 F.3d 1089, 1094 (9th Cir. 1999).

[54] United States v. Edwards, 897 F.2d 445, 446-47 (9th Cir. 1990) (finding that the defendant's silence at trial effectively waived his right to testify on his own behalf, despite defendant's contention that trial counsel refused to allow defendant to testify and that defendant was unaware of his right to testify).

[55] United States v. Joelson, 7 F.3d 174, 177 (9th Cir. 1993) ("Although the ultimate decision whether to testify rests with the defendant, he is presumed to assent to his attorney's tactical decision not to have him testify.").

[56] See Dows v. Woods, 211 F.3d 480, 487 (9th Cir. 2005) (denying a claim that trial counsel denied defendant's right to testify where "at no time during the trial did [the defendant] ever indicate that he wanted to testify or that he was prevented from doing so by counsel.").

## VII.

## __RECOMMENDATION__

IT THEREFORE IS RECOMMENDED that the District Court issue an Order:  (1) approving and accepting this Final Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED:  November 12, 2015

_Louise A. LaMothe_
HONORABLE LOUISE A. LAMOTHE
United States Magistrate Judge